ALBERTO BEDOYA, Indiv. and d/b/a Casanova's, Inc., Plaintiff-Appellee, v. ILLINOIS FOUNDERS INSURANCE COMPANY, Defendant-Appellant.

First District (4th Division)   No. 1—96—2467

Opinion filed November 26, 1997, *nunc pro tunc* September 30, 1997.

Haskell & Perrin, of Chicago (Mary Beth Denefe and Robert W. Brunner, of counsel), for appellant.

Robert B. Morton, of Chicago, for appellee.

JUSTICE BURKE delivered the opinion of the court:

Defendant Illinois Founders Insurance Company (Illinois Founders) appeals from an order of the circuit court granting summary judgment in favor of plaintiff Alberto Bedoya, d/b/a Casanova's, Inc. (Alberto), based on its determination that Illinois Founders owed Alberto a duty to defend him in an underlying action pursuant to an insurance policy issued by it to Alberto which provided coverage for claims brought under the Illinois Dramshop Act (235 ILCS 5/6—21 (West 1992)). The trial court also found that Illinois Founders was estopped from asserting defenses to coverage and that it should pay George Bedoya's[1] (George) and Alberto's attorney fees and costs in the underlying action, penalties pursuant to section 155 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/155 (West 1992)), attorney fees for Alberto's declaratory judgment action pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137) and prejudgment interest pursuant to section 2 of the Illinois Interest Act (815 ILCS 205/2 (West 1992)). On appeal, Illinois Founders argues that the trial court erred in ruling that: (1) Illinois Founders had a duty to defend counts II and IV of the underlying action; (2) Illinois Founders had a duty to defend any counts of the underlying action under the insurance policy; (3) Illinois Founders had a duty to indemnify Alberto with respect to noncovered claims under counts II and IV of the underlying lawsuit; (4) Illinois Founders' conduct with respect to providing a defense in the underlying action was vexatious and unreasonable pursuant to section 155 of the Insurance Code; (5) Alberto was entitled to sanctions pursuant to Supreme Court Rule 137; (6) Illinois Founders had a duty to defend George in the underlying action; and (7) Alberto was entitled to an award of prejudgment interest pursuant to section 2 of the Interest Act. For the reasons set forth below, we affirm in part and reverse in part.

On September 20, 1989, Illinois Founders issued an insurance policy listing as the licensee Casanova's, Inc. (Casanova's), and Alberto, doing business as Casanova's Cafe. The policy provided that Illinois Founders would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay by reason of the liability imposed upon him by *** the 'Dram Shop Act' and all laws amendatory thereof, for damages."

---

[1]George is the adult son of Alberto. George was also the manager at Casanova's. There is conflicting testimony in Alberto's deposition that George was an executive officer of Casanova's, but this testimony is very uncertain.

On January 2, 1991, Claire Elizabeth MacMahon (MacMahon) filed a complaint against "Albert [*sic*] Bedoya, d/b/a Casonova's Lounge, Ltd. [*sic*], an Illinois corp., a/k/a Casanova's, Inc., George Bedoya, *** [and] John Doe." Count I of the complaint alleged that, while at Casanova's, George and John Doe, an unknown party, had imbibed alcoholic liquor and assaulted MacMahon and that John Doe raped MacMahon. MacMahon requested judgment against Alberto and Casanova's under the Dramshop Act. Count II alleged a claim for negligence against Alberto and Casanova's under the same facts. Count IV[2] requested actual and punitive damages against John Doe. While George is named as a defendant in MacMahon's complaint, no specific count of the complaint requested judgment against him.

On April 1, 1991, Reda & Hennessy, P.C. (Reda), on behalf of Alberto and Casanova's, sent MacMahon's complaint to Illinois Founders and requested coverage for Alberto and Casanova's and that Illinois Founders investigate the claim and defend the action under the policy. On April 3, 1991, George retained Robert B. Morton (Morton) as his attorney. Their agreement listed Alberto as the guarantor of the agreement.

On April 9 and 10, 1991, Sherwin Greenberg, an attorney for Illinois Founders, and Illinois Founders, sent separate letters to Reda, stating that Illinois Founders would defend Casanova's and Alberto only as to count I of the MacMahon lawsuit. On October 1, 1991, Alberto retained Morton and Reda as attorneys for himself and Casanova's.

Illinois Founders subsequently settled count I of MacMahon's complaint for $500 but declined to defend the other counts. MacMahon settled the remainder of the case with Alberto, George and Casanova's for $7,500. The lawsuit was dismissed in its entirety with prejudice in an agreed order entered on May 8, 1995.

On July 24, 1995, Alberto filed a complaint for declaratory judgment and other relief against Illinois Founders and, on September 11, amended his complaint. The amended complaint alleged that Illinois Founders breached its duty to defend under the policy, Alberto was damaged by the breach and that Illinois Founders' refusal to defend was vexatious and unreasonable. Alberto requested that the trial court assess actual damages against Illinois Founders and award him attorney fees, sanctions and prejudgment interest.

In its answer to Alberto's amended complaint, Illinois Founders admitted that count I of MacMahon's complaint had stated a claim potentially within the provisions of the insurance policy and that it

---

[2]There is no count III in MacMahon's complaint.

declined to defend on the other counts. However, Illinois Founders denied that: it had a duty to defend the entire lawsuit; it breached its duty; Alberto and Casanova's were damaged by its failure to defend; and that its conduct was vexatious or unreasonable. Illinois Founders sought a determination by the court to find that it had no duty to defend, pay attorney fees or indemnify for costs arising out of the remainder of MacMahon's complaint and that it acted in good faith. In its affirmative defense, Illinois Founders denied that Alberto or Casanova's had any right to the relief requested in the amended complaint.

The parties subsequently entered into an agreed protective order for all documents produced and entered into an agreed scheduling order which stated that if confidential materials were filed in the briefs, they should be filed under seal.

Thereafter, Alberto filed a motion for summary judgment, arguing that Illinois law requires an insurer to defend an entire lawsuit even if only one count falls within the policy and that the court should award attorney fees and costs, the settlement amount, prejudgment interest, penalties and sanctions. Illinois Founders filed a response and its own motion for summary judgment, arguing that: it had no duty to defend under the terms of the policy; it had no duty to defend the entire lawsuit under the case law; it had no duty to indemnify Alberto as to count II; and the relief requested by Alberto was either improper or presented issues of material fact and, as such, was not ripe for summary judgment.

Alberto filed a motion to strike Illinois Founders' response and for additional sanctions for Illinois Founders' violation of the protective order, which he alleged occurred when Illinois Founders failed to file its response and motion for summary judgment under seal.

The trial court granted Alberto's motion for summary judgment, awarding the relief requested in the motion, including sanctions pursuant to section 155, denied Illinois Founders' motion for summary judgment, expressly found that Illinois Founders' conduct was vexatious and unreasonable, and set a briefing schedule and a date for a hearing on attorney fees and other costs. Alberto filed a summary of damages and affidavits setting out fees and prejudgment interest, totaling $58,488.23. Illinois Founders filed a memorandum in opposition to Alberto's damages, challenging the legal fees, the settlement amount for count II, prejudgment interest and section 155 penalties. Alberto filed a reply and rebuttal affidavit in support of the fees.

At the hearing on the fees and other costs, the trial court entered judgment for Alberto in the amount of $58,488.23: $25,798.05 for attorney fees; $7,500 for settlement cost of counts II and IV; a 25%

penalty pursuant to section 155 for Illinois Founders' vexatious and unreasonable conduct; prejudgment interest pursuant to section 2 of the Interest Act; and attorney fees as a sanction pursuant to Rule 137[3] for defending the declaratory judgment action. This appeal followed.

■ The standard of review of a summary judgment is *de novo.* *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992). "Although our supreme court has encouraged the use of the summary judgment procedure as an aid to the expeditious disposition of a lawsuit [citation], it has also emphasized that the device is a drastic means of disposing of litigation and should be used only when the right of the moving party is clear and free from doubt." *Sears, Roebuck & Co. v. Seneca Insurance Co.*, 254 Ill. App. 3d 686, 690, 627 N.E.2d 173 (1993).

Illinois Founders first argues that the trial court erred in holding that it had a duty to defend Alberto, Casanova's and George as to counts II and IV of MacMahon's complaint because the policy provided coverage solely for damages recoverable under the Dramshop Act, and count II was based on negligence and count IV on actual and punitive damages against John Doe. It argues that defense costs between the covered claim under count I and the noncovered claims under counts II and IV should have been separately allocated. Alberto argues that the law is well settled that "where an insured is covered as to one count in a multi-count lawsuit, the insurer must defend as to the entirety of the lawsuit." Therefore, since it is undisputed that Illinois Founders had a duty to defend as to count I of the underlying complaint, it had a duty to defend as to counts II and IV. Alberto further argues that Illinois Founders was specifically aware of this law because it had been involved in litigation very similar to this case in *Illinois Founders Insurance Co. v. Smith*, 231 Ill. App. 3d 269, 596 N.E.2d 59 (1992).

■ Illinois courts have consistently held that "[the] duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the others may not be." *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 194, 355 N.E.2d 24 (1976).[4] Notwithstanding the fact that other jurisdictions have found that the

---

[3]The order states that attorney fees alternatively could be granted pursuant to section 155.

[4]See *Western Casualty & Surety Co. v. Adams County*, 179 Ill. App. 3d 752, 128 N.E.2d 1066 (1989); *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991); *Fidelity & Casualty*

duty to defend may be allocated between the insurer and the insured based upon the claims involved, as Illinois Founders argues, *Peppers* is the settled law in Illinois.

We briefly note that Illinois Founders' argument that *JG Industries, Inc. v. National Union Fire Insurance Co.*, 218 Ill. App. 3d 1061, 578 N.E.2d 1259 (1991), and *Caterpillar, Inc. v. Great American Insurance Co.*, 62 F.3d 955 (7th Cir. 1995), "have opened the door for the Illinois courts to reexamine the holding in *Peppers*" is unfounded. Neither of these cases challenges the weight of authority in Illinois toward nonapportionment. Illinois Founders also cites to several cases in foreign jurisdictions that allocated defense costs.[5]

Illinois Founders further argues that *Peppers* and the cases following it are distinguishable from this case, because none of them involved a liquor liability policy. Merely because different types of insurance coverage were at issue in the cases that relied on *Peppers* does not affect the well-settled law in Illinois that an insurer must defend its insured in all counts of a lawsuit when a policy includes a duty to defend and at least one of the counts of the suit falls within policy coverage. Illinois Founders also relies on *Outboard Marine* in support of its position; however, *Outboard Marine* is distinguishable from the present case. In *Outboard Marine*, the issue was whether the insurers had a *duty to indemnify* during a period in which the insured carried no insurance. Here, the issue is whether Illinois Founders had a *duty to defend* during the period of the policy's coverage. Lastly, Illinois Founders' argument that this court's ruling in *Illinois Founders* is distinguishable from the case at bar is without merit. In *Illinois Founders*, the defendants tendered their defense to Illinois Founders under a dramshop and general liability policy for litigation brought pursuant to a shooting incident that occurred in their bar. As we hold here, the *Illinois Founders* court held that, pursuant to *Peppers*, Illinois Founders had a duty to defend the entire suit. The fact that a general liability policy was also issued in addition to the dramshop policy in *Illinois Founders* does not change the well-settled rule that an insurer must defend all counts of a multi-count lawsuit even if only one of the counts falls within the coverage of the insurance policy. We find, therefore, that Illinois Founders had

---

*Co. v. Mobay Chemical Corp.*, 252 Ill. App. 3d 992, 997, 625 N.E.2d 151 (1993); *Altaf v. Hanover Square Condominium Ass'n No. 1*, 188 Ill. App. 3d 533, 544 N.E.2d 1032 (1989); *JG Industries*, 218 Ill. App. 3d at 1067.

[5]See, *e.g.*, *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1981); *Hogan v. Midland National Insurance Co.*, 3 Cal. 3d 553, 476 P.2d 825, 91 Cal. Rptr. 153 (1970); *SL Industries, Inc. v. American Motorists Insurance Co.*, 128 N.J. 188, 607 A.2d 1266 (1992).

a duty to defend all counts of the underlying lawsuit, *i.e.*, counts I, II and IV.

Illinois Founders next argues that the trial court erred in finding that it had a duty to defend on any of the counts of the underlying complaint because the policy does not require a duty to defend but, rather, is simply an "indemnity policy." Alberto argues that the policy is ambiguous and Illinois Founders admitted that it had a duty to defend count I.

■ "The construction of an insurance policy's provisions is a question of law." *Outboard Marine*, 154 Ill. 2d at 108. "Insurance policy terms must be read according to their plain and ordinary meanings; any ambiguities arising when several provisions of the policy are read together will be construed in favor of the insured." *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 126 Ill. App. 3d 150, 153, 266 N.E.2d 1091 (1984). If a provision is subject to more than one reasonable interpretation, it is ambiguous. *Wilkins Insulation*, 144 Ill. 2d at 74.

■ Here, while the policy does not clearly provide for a duty to defend, it does state:

"[T]he company shall not be obligated to pay any claim or judgment or *to defend any suit* after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements. ·

\* \* \*

The company will pay, in addition to the applicable limit of liability;

(a) \*\*\* all costs taxed against the insured *in any suit defended by the company*
\* \* \*

The insured shall cooperate with the company and, upon the company's request, assist in making settlements, *in the conduct of suits* and in enforcing any right of contribution or indemnity \*\*\*; and the insured shall attend hearings and trials and assist in securing and giving evidence and in obtaining the attendance of witnesses." (Emphasis added.)

These terms could be reasonably read to either provide only a duty to indemnify or provide both a duty to defend and a duty to indemnify. This ambiguity must be resolved in favor of the insured, Alberto. Accordingly, we find, as discussed above, that the trial court properly determined that Illinois Founders had a duty to defend Alberto and Casanova's under the policy on all counts.

■ Illinois Founders also argues that the trial court abused its discretion in requiring it to indemnify Alberto for the $7,500 settlement entered into by Alberto for settlement of counts II and IV of

the underlying complaint, which were noncovered claims. It argues that an insured is only entitled to indemnity for losses that clearly fall within the policy and that these claims did not. Alberto argues that Illinois Founders is estopped from denying coverage and liability for the additional settlement payment. Illinois Founders counters that it is not estopped from denying coverage for counts II and IV because it did adjudicate its rights under the declaratory judgment action brought by Alberto before the trial court when it brought its motion for summary judgment.[6]

It is well settled that "[o]ne effect of an insurer's wrongful failure to defend a lawsuit is to estop the insurer from later raising policy defenses or noncoverage in a subsequent action by the insured ***. [Citations.] If there is doubt as to whether or not an insurer must defend a suit, the insurer should defend under a reservation of rights or seek a declaratory judgment." *Fidelity & Casualty*, 252 Ill. App. 3d at 998.[7] Here, Illinois Founders did not defend under a reservation of rights or seek a declaratory judgment. Instead, Alberto filed the declaratory judgment action after Illinois Founders settled count I of MacMahon's complaint and Alberto settled counts II and IV, and MacMahon's complaint was dismissed. Therefore, Alberto's declaratory judgment action was not brought prior to or pending the underlying action and, accordingly, the trial court properly ruled that Illinois Founders was estopped from denying coverage and liability.

We briefly note that Illinois Founders' reliance on *Industrial Coatings Group, Inc. v. American Motorists Insurance Co.*, 276 Ill. App. 3d 799, 658 N.E.2d 1338 (1995), and *JG Industries* is misplaced. The *Industrial Coatings* court held that, even if an insurer does not bring a declaratory judgment itself, it is not estopped from denying coverage because "an action brought by an insured will adjudicate the insurer's obligations just as well" and "to avoid the doctrine of estoppel *** an insurer need only seek adjudication of its rights and obligations under the policy *prior to or pending resolution of the underlying lawsuit*." (Emphasis added.) *Industrial Coatings*, 276 Ill. App. 3d at 811. *Industrial Coatings* is distinguishable from the instant case because here, as discussed above, the declaratory judgment action was not brought prior to or pending the underlying action.

Similarly, while the *JG Industries* court found that when there is

---

[6]Illinois Founders also argues that it did not waive any of its rights. Alberto did not address the issue of waiver in his brief.

[7]See also *Shell Oil Co. v. AC&S, Inc.*, 271 Ill. App. 3d 898, 902, 649 N.E.2d 946 (1995).

no duty to defend, an insurer cannot be estopped from denying coverage[8] (*JG Industries*, 218 Ill. App. 3d at 1065, 578 N.E.2d at 1261), as discussed above, Illinois Founders did have a duty to defend because in Illinois the insurer has a duty to defend the entire lawsuit even if only one count in the complaint falls within the policy terms. *Western Casualty & Surety Co.*, 179 Ill. App. 3d at 757.

Illinois Founders next contends that the trial court erred in imposing a 25% penalty against it pursuant to section 155 of the Insurance Code based on the trial court's determination that its conduct was vexatious and unreasonable. Illinois Founders argues that its behavior and attitude in this case were not vexatious and unreasonable in refusing to defend counts II and IV because a *bona fide* dispute existed in the case, and that Alberto failed to make specific factual allegations necessary to support his claim for section 155 penalties.

Alberto argues that the trial court had the discretion to award attorney fees for the declaratory judgment action pursuant to section 155 based on Illinois Founders' refusal to defend the underlying action, its "sanctionable and meritless" defense in the declaratory judgment action and its bad-faith argument that it had no duty to defend, which was contrary to the well-settled law and this court's decision in *Illinois Founders*. Alberto further argues that there was no *bona fide* dispute in this case and, even assuming there was a *bona fide* dispute, Illinois Founders failed to defend under a reservation of rights or seek a declaratory judgment, which is sanctionable behavior. Alternatively, Alberto argues that even if this court finds that the trial court's ruling regarding the imposition of section 155 penalties was erroneous, Illinois Founders' conduct was sanctionable pursuant to Supreme Court Rule 137.

■ Section 155 of the Insurance Code provides, in pertinent part, as follows:

---

[8]Illinois Founders argues that it appears that no dismissal order was ever entered in the underlying action because it does not appear in the "on-line court record." Illinois Founders does admit, however, "that what appears to be a copy of a dismissal order was attached as an exhibit" to Alberto's memorandum of law in support of his motion for summary judgment. This document is an "Agreed Order" dismissing MacMahon's complaint with prejudice, and is stamped with the date of May 8, 1995, with Judge Willie R. Wright's stamp. Illinois Founders' argument that MacMahon's complaint was never dismissed is disingenuous in light of the agreed order. Because the agreed order dismissing the MacMahon complaint was included in the record, albeit as an exhibit to another document, Illinois Founders cannot rely on the "on-line record" of a case to argue that this document does not exist.

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155 (West 1992).

Illinois courts have interpreted section 155 as the legislature's "remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits." *Richardson v. Illinois Power Co.*, 217 Ill. App. 3d 708, 711, 577 N.E.2d 823 (1991). Determining what constitutes vexatious and unreasonable refusal to defend is a matter for the trial court. *Richardson*, 217 Ill. App. 3d at 711. "It would defeat the purpose of the statute to allow an insurer to escape any penalty when it fails to provide one of the most important benefits of a liability policy—a defense." *Richardson*, 217 Ill. App. 3d at 711. "[S]ection 155 of the Illinois Insurance Code allows the trial court to make a finding that the insurer's conduct constituted vexatious or unreasonable delay in any cause where there is an issue of the insurer's liability on a policy or where the issue revolves around the amount of the loss payable under the policy. *** The court may consider that the insured was forced to file suit to recover [citation] and that the insured was deprived of the use of his property. [Citation.] However, if there is a *bona fide* dispute about coverage, delay in settling a claim may not violate the statute." *Mohr v. Dix Mutual County Fire Insurance Co.*, 143 Ill. App. 3d 989, 997-99, 493 N.E.2d 638 (1986). If the insured merely states that the insurer committed vexatious and unreasonable delay "without some modicum of factual support," the insured will not have stated a cause of action under section 155. *Scudella v. Illinois Farmers Insurance Co.*, 174 Ill. App. 3d 245, 252, 528 N.E.2d 218 (1988).

■ In the present case, because it is well settled in Illinois that an insurer must defend its insured in the entire lawsuit even if only one count of the complaint alleges an action under the policy (*Peppers*, 64 Ill. 2d at 194; *Illinois Founders*, 231 Ill. App. 3d 269, 596 N.E.2d 59), it is clear that no *bona fide* dispute about coverage regarding Illinois

Founders' duty to defend Alberto and Casanova's existed. And while we find there was a *bona fide* dispute as to the separate issue of coverage for George, as discussed below, Illinois Founders nonetheless had a clear duty to defend Alberto and Casanova's. We further find that Illinois Founders' argument that Alberto failed to provide factual support for its argument is meritless. Alberto did provide the "modicum of factual support" required to state a claim in his reply memorandum, *i.e.*, that Illinois Founders' behavior was "in blatant disregard of the law" because it refused to defend Alberto and Casanova contrary to both *Peppers* and *Illinois Founders*.

In determining that Illinois Founders committed vexatious and unreasonable delay, the trial court initially found that Illinois Founders had known about this court's decision in *Illinois Founders*. The trial court was then interrupted and never completed its remarks regarding any additional bases for so finding. However, this finding is enough to show that the trial court properly exercised its discretion in finding that Illinois Founders' behavior was vexatious and unreasonable.

Illinois Founders further contends that the trial court erred in ruling as a matter of law that Alberto was entitled to attorney fees and costs for his declaratory judgment action as sanctions pursuant to Supreme Court Rule 137. Illinois Founders argues that the trial court erred in failing to set forth the basis of its decision regarding Rule 137 sanctions. Illinois Founders maintains that the trial court abused its discretion in awarding sanctions because Illinois Founders did not bring the present action, that Rule 137 is not an appropriate remedy for a failure to defend and that sanctions under Rule 137 were inappropriate because a *bona fide* dispute existed as to the duty to defend.

■ Supreme Court Rule 137 provides, in pertinent part, as follows:

> "The signature of an attorney or a party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or

parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee. \*\*\*
\*\*\*

Where a sanction is imposed under this rule, the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." 134 Ill. 2d R. 137.

"The granting or denying of sanctions under Rule 137 is entrusted to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074, 651 N.E.2d 601 (1995). "In order to allow the appellate court to make an informed and reasoned review of the sanction decision, however, the trial court must set forth the reasons and basis for its decision." *Kellett v. Roberts*, 281 Ill. App. 3d 461, 464, 667 N.E.2d 558 (1996).

■ While the trial court here found that it could grant these sanctions under either section 155 of the Insurance Code or Supreme Court Rule 137, it expressly ruled that it would impose the sanctions under Rule 137 rather than section 155. The trial court set forth no reasons for granting attorney fees for the declaratory judgment action under Rule 137 other than "[t]hey [plaintiffs] are entitled to it." Therefore, we reverse the trial court's grant of Rule 137 sanctions and remand the cause for further proceedings to allow the trial court to make specific findings of fact or law supporting its decision.

We briefly note, in response to Illinois Founders' further arguments on this issue, that: Rule 137 does not require the filing of an action to allow sanctions because all that is necessary is filing of a "pleading, motion or other paper" (*Kellett*, 281 Ill. App. 3d at 464); while the trial court did not make any specific statements as to its reasoning for granting Rule 137 sanctions, the record contains evidence that Illinois Founders filed papers that stated a blatantly incorrect legal analysis in its arguments regarding the law in Illinois on an insurers' duty to defend and documents that should have been filed under seal in violation of a court order, either or both of which actions support the imposition of sanctions under Rule 137; and as discussed above, no *bona fide* dispute existed, with the exception of the issue of George's coverage, as discussed below, which did not excuse Illinois Founders from defending Alberto and Casanova's under the policy.

■ Illinois Founders further contends that the trial court erred in ruling that it was obligated to pay the attorney fees and costs of defending George. We initially address Illinois Founders' contention

that George was not covered under the policy because no count in MacMahon's complaint was directed at George. Alberto argues that Illinois Founders' statement that no count was directed at George "is false and a 'red herring'" because Illinois Founders knew that MacMahon's complaint was amended to add a count against George. Illinois Founders does not assert that such an amended complaint does not exist; it merely states that the record contains no amended MacMahon complaint.

It is the appellant's burden on appeal to provide a sufficient record, and in the absence of such a record, the appellate court will assume that the trial court's holding was in conformance with established legal principles and had a sufficient factual basis. *Cannella v. Village of Bridgeview*, 284 Ill. App. 3d 1065, 1079, 673 N.E.2d 394 (1996). While the record does not contain an amended complaint for the MacMahon lawsuit, the trial court found that Illinois Founders should pay for George's defense. Therefore, we must assume that George was properly included as a party.

As to this issue, Alberto also maintains that the defense of George was necessary "for the direct protection" of Alberto and Casanova's because MacMahon's complaint sought to impose liability under *respondeat superior* for the actions of George. Alberto further contends that there was at least a colorable issue of coverage for George under the broad duty to defend. Alberto asserts that Illinois Founders is estopped from asserting that George is not insured under the policy because it did not defend under a reservation of rights or file a declaratory judgment action for a determination of coverage. Alberto cites to no case law for this proposition in his brief. Alternatively, Alberto argues that allocation of costs for defending George and Alberto is impractical because MacMahon's complaint against Alberto is predicated on vicarious liability. Illinois Founders argues that Alberto's *respondeat superior* argument is not supported by Illinois law. As to Alberto's alternative argument, Illinois Founders argues that defense costs were readily apportionable.

A reviewing court will reverse an order granting summary judgment if it determines that a genuine issue of material fact exists. *Western Casualty*, 179 Ill. App. 3d at 756. The doctrine of estoppel against an insurer for failure to defend requires that "[w]hen an insured *tenders a defense* to an insurer, the insurer may not simply refuse to participate in the litigation and wait for the insured to institute litigation against the insurer to determine the insurer's rights and duties." (Emphasis added.) *Shell Oil*, 271 Ill. App. 3d at 902. In order for estoppel to apply, the court must find that the insurer had a duty to defend, and then find that the insurer breached that duty. *Industrial Coatings*, 276 Ill. App. 3d at 810.

■ Here, MacMahon's complaint does allege *respondeat superior* liability against Alberto and Casanova's. However, this alone does not bring George under the policy as an insured. There is no evidence in the record that the defense of George was tendered to Illinois Founders. If George's defense was never tendered to Illinois Founders, Illinois Founders cannot be estopped from disputing policy coverage. The trial court found that Illinois Founders had a duty to defend Alberto for "the entire lawsuit" and on that basis the court granted summary judgment for Alberto. However, the trial court did not specifically find that Illinois Founders had a duty to defend George or why Illinois Founders was responsible for George's attorney fees. While it is undisputed that George was the manager of Casanova's on the date of the alleged attack and rape in the MacMahon lawsuit, there was conflicting evidence as to whether George was an executive officer of Casanova's. In addition, there is no evidence in the record to determine whether George was a director or stockholder of Casanova's. We therefore find that summary judgment on the issue of whether Illinois Founders was responsible for George's attorney fees and costs was improper because a genuine issue of material fact existed regarding whether the policy provided coverage for George.

We further note that Alberto's summary of damages and affidavits in support thereof contained attorney fees for George's defense as well as fees for Alberto and Casanova's defense. Illinois Founders argued, at the hearing on fees, that George's attorney fees should not be included in the calculations of fees charged to Illinois Founders. However, the trial court did not make any ruling as to whether it was impractical to apportion fees. The trial court simply held that Alberto was entitled to receive all of the attorney fees incurred in the defense of the underlying suit from Illinois Founders. Therefore, we conclude that in the event the trial court determines George was not covered by the policy, it must also review the attorney fees and apportion them as necessary.

■ Illinois Founders next contends that the trial court erred in ruling that Alberto and Casanova's were entitled to an award of prejudgment interest pursuant to section 2 of the Interest Act, arguing that prejudgment interest under section 2 may only be awarded when there has been an unreasonable and vexatious delay of payment. Because we have determined above that the trial court properly found that Illinois Founders' conduct was in fact vexatious and unreasonable, we need not address this argument further. Accordingly, we hold that the trial court properly imposed prejudgment interest. However, because we also have determined that a material

question of fact exists as to whether George is covered under the policy, and thus whether Illinois Founders had a duty to defend George, the issue of the calculation of the prejudgment interest, as argued by Illinois Founders, must be reconsidered by the trial court, if necessary.

■ Alberto also argues that he is entitled to attorney fees for the defense of this appeal under section 155 or, alternatively, Rule 137. Illinois Founders argues that a grant of attorney fees under section 155 would be improper because there is a *bona fide* dispute. In our discretion, we deny attorney fees or other sanctions against Illinois Founders under section 155 or Rule 137 regarding this appeal.

■ Lastly, Alberto argues that Illinois Founders' actions on appeal with regard to attempting to open the sealed record and its alleged "misrepresentations of the record and the law" show bad faith and this bad faith "is so palatable, as to independently warrant affirmations of the Trial Court's Judgment." Because Alberto fails to cite to any authority in support of his argument, he has waived the argument. *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 385 N.E.2d 664 (1978).

For the reasons stated, we affirm in part, reverse in part, and remand this cause to the trial court for a factual determination of George's coverage under the policy and a recalculation of the attorney fees, costs and prejudgment interest, if necessary.

Affirmed in part; reversed in part and remanded, with directions.

WOLFSON, P.J., and CERDA, J., concur.