WILLIAM J. McKINNEY, Indiv. and as Special Adm'r of the Estates of Ann McKinney, Deceased and Baby Boy McKinney, Deceased, Plaintiff-Appellant, v. AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN et al., Defendants-Appellees.

Third District   No. 3—97—0252

Opinion filed April 14, 1998.

Stuart R. Lefstein (argued) and Dale G. Haake, both of Katz, McHard, Balch, Lefstein & Fieweger, P.C., of Rock Island, for appellant.

Richard S. Porter (argued), of Hinshaw & Culbertson, of Rockford, and Bruce L. Carmen, of Hinshaw & Culbertson, of Chicago, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

We are asked to determine whether an underinsured motorist (UIM) endorsement allows recovery when the insured recovered less than the damages he was legally entitled to recover from the tortfeasor's insurer, but more than the limits of recovery under his underinsured motorist endorsement. Plaintiff William McKinney contends that under the underinsured motorist clause in his American Standard Insurance (American) policy, American agreed to coverage for the entire amount of his compensable damages, subject to the limits of his policy, less any recovery from the tortfeasor. We agree. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

McKinney's wife and unborn child were killed in a car accident when Robert Cromie ran a stop sign. The policy Cromie held limited liability to $100,000 per person and $300,000 per accident. Cromie's insurer paid McKinney $300,000 and Cromie personally paid McKinney another $18,000. But McKinney alleged that his total damages exceed $318,000, so he turned to his own insurance policy for coverage.

McKinney's American policy provided UIM coverage with limits of liability of $25,000 per person and $50,000 per accident. In addition, the policy stated:

"Underinsured motorists (UIM) Coverage Endorsement—

We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the underinsured motor vehicle.

\* \* \*

Underinsured motor vehicle means a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the damages an insured person is legally entitled to recover.

\* \* \*

Limits of liability—

Any amounts payable will be reduced by:

1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle."

McKinney brought a declaratory judgment action seeking to recover under his UIM clause. He claimed that, because Cromie was an underinsured motorist, he was entitled to prove the entire amount of

damages and recover the difference between the amount paid and his total damages up to the full policy limit. American denied that it owed any amount since the $318,000 recovered exceeded McKinney's UIM limits of $50,000 and moved for summary judgment on this basis. The trial court granted American's motion and McKinney appeals.

## ANALYSIS

■ Summary judgment should only be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992). When the only issue concerns the construction of an insurance policy, the cause of action may appropriately be decided by summary judgment. *Giardino v. American Family Insurance*, 164 Ill. App. 3d 389, 517 N.E.2d 1187 (1987). Appellate review of summary judgment is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 615 N.E.2d 736 (1993).

The sole issue is whether the term "amounts payable" as used in the policy refers to the total amount of damages legally due McKinney or McKinney's underinsured policy limit of $50,000.

■ When the language of an insurance policy is clear and unambiguous, the court must construe the policy according to the plain and ordinary meaning of its provisions. *Allstate Insurance Co. v. Gonzalez-Loya*, 226 Ill. App. 3d 446, 589 N.E.2d 882 (1992). The paramount objective is to ascertain and give effect to the intention of the parties. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 522 N.E.2d 758 (1988). In ascertaining their intentions, all parts of the insurance contract should be considered together. *Grevas v. United States Fidelity & Guaranty Co.*, 152 Ill. 2d 407, 604 N.E.2d 942 (1992). If words in a policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 283 Ill. App. 3d 630, 670 N.E.2d 740 (1996). Whether an ambiguity exists is a question of law for the court to determine. *Marroquin v. Auto-Owners Insurance Co.*, 245 Ill. App. 3d 406, 614 N.E.2d 528 (1993).

. First we must focus on the limits of liability provision of the UIM endorsement, which states that "any amounts payable will be reduced by a payment made or amount payable by or on behalf of any person or organization which may be legally liable." McKinney contends that this language requires American to pay him for the full amount of compensatory damages less the amount paid by the tortfeasor and

his insurer, subject, of course, to his UIM limits. American contends that the provision does not require compensation for the full amount of damages. Relying, in part, on *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474 (1997), it asserts that the limits of liability provision limits coverage to $50,000 minus the amount paid by the tortfeasor and his insurer. Because *Cummins* is distinguishable on its policy language, we agree with McKinney.

In *Cummins* the injured plaintiff carried UIM coverage in the amount of $50,000 and the tortfeasor carried identical liability limits of $50,000 per person. The plaintiff recovered $35,000 from the at-fault driver and sought further recovery from his own insurer. The insurer refused, claiming that the tortfeasor was not an underinsured motorist under the policy's definition. In reaching its conclusion, the court recognized that the UIM statute indicates coverage when there is a gap between the amount actually recovered from the tortfeasor and the UIM policy limit of the injured party. The Illinois Insurance Code (Code) (215 ILCS 5/1 *et seq.* (West 1996)) characterizes an underinsured motor vehicle as an insured vehicle with liability insurance limits "less than the limits for underinsured coverage." 215 ILCS 5/143a—2(4) (West 1996). The insurance policy at issue in *Cummins* also defined an underinsured motor vehicle as one for which the sum of the limits of liability under all bodily injury liability insurance policies is *"less than the limits"* for underinsured coverage. (Emphasis added.) *Cummins*, 178 Ill. 2d at 479. Consequently, the court applied a statutory analysis to the UIM provision of the policy. *Cummins*, 178 Ill. 2d 474.

■ The policy in Mr. McKinney's case is different. The UIM endorsement defines an underinsured motor vehicle as one with "a liability *** policy *** which provides bodily injury liability limits *less than the damages* an insured person is legally entitled to recover." (Emphasis added.) This definition is broader and more inclusive than that found in the Code. See *Johnson v. American Family Mutual Insurance Co.*, 193 Ill. App. 3d 794, 550 N.E.2d 668 (1990) (a policy can provide broader UIM coverage than statutory coverage). Accordingly, defining the policy in terms of the Code is inadequate. If McKinney can prove damages greater than $318,000, Cromie would be considered an underinsured motorist under the policy American issued to him.

In determining the extent to which the limits of liability clause affects McKinney's UIM claim, it is appropriate to consider an insured's reasonable expectations and the coverage intended by the policy. *Cummins*, 178 Ill. 2d 474. The language of the American policy proclaims that it will pay all compensable damages. Thus, a reason-

able person in the position of the insured could expect "amounts payable" to be the equivalent of the total damages incurred. Several jurisdictions agree with this interpretation. See *Delaplane v. Francis*, 636 N.E.2d 169 (Ind. App. 1994) ("amounts payable" refers to the total bodily damages, not the coverage limit); *American Family Mutual Insurance Co. v. Turner*, 824 S.W.2d 19 (Mo. App. 1991) ("amounts payable" means the determined amount of damages sustained reduced by the amount paid by the underinsured motorist); *Wood v. American Family Mutual Insurance Co.*, 148 Wis. 2d 639, 436 N.W.2d 594 (1989), *overruled on other grounds by Matthiesen v. Continental Casualty Co.*, 193 Wis. 2d 192, 202, 532 N.W.2d 729, 733 (1995) (a reasonable person would equate "amounts payable" to the total damages suffered); *American States Insurance Co. v. Estate of Tollari*, 362 N.W.2d 519 (Iowa 1985) (insured can recover his entire loss from the tort less the tortfeasor's available liability insurance proceeds, subject to the underinsured coverage). Because the provisions of this policy are susceptible to more than one reasonable interpretation, we find that the term "amounts payable" is ambiguous. Thus, the construction most favorable to McKinney must be adopted.

Were we to accept American's interpretation that "amounts payable" means the UIM coverage limit, the insurer would never pay its UIM policy's limits. An insurance company would always subtract at least some recoverable amount (recovered from the tortfeasor and his insurer) from the amount payable to the insured under her underinsured coverage. Thus, an insured could never recover the full benefit of her underinsured motorist coverage. See *Buck v. American Family Mutual Insurance Co.*, 921 S.W.2d 96 (Mo. App. 1996); *Wood*, 148 Wis. 2d at 647, 436 N.W.2d at 600 (the endorsement for UIM coverage would be nothing more than an illusory contract).

We are also unpersuaded that coverage is compelled by the decision in *Giardino v. American Family Insurance*, 164 Ill. App. 3d 389, 517 N.E.2d 1187 (1987). The American Family Insurance policy in *Giardino* contained the identical language considered in the instant case. The plaintiff's policy provided UIM coverage of $100,000 and the underinsured motorist paid the plaintiff $100,000. The court held that the plaintiff was not entitled to recovery because the "amount payable" to the insured equaled the UIM coverage limit reduced by any payment from the tortfeasor. In so doing, the court considered the statutory definition and noted that its holding brought the policy in line with the Code. *Giardino*, 164 Ill. App. 3d 389, 517 N.E.2d 1187. As previously discussed, we find such an analysis inappropriate and disagree with the holding in *Giardino*.

Consequently, we hold that coverage for the UIM policy in this

case is available for that margin between the amount received by McKinney from the underinsured and the actual damages he is entitled to recover. This does not mean American is responsible for more than the contracted amount of underinsured motorist coverage, *i.e.*, $50,000. McKinney has received $318,000 from the underinsured driver. The limits of liability clause of the policy operates to subtract this amount from the total damages sustained by McKinney. The amount remaining is the amount recoverable from American, subject to the UIM coverage limit of $50,000. Accordingly, we remand this case to the trial court for a hearing on the total amount of damages incurred.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is reversed and remanded.

Reversed and remanded.

LYTTON and SLATER, JJ., concur.